Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiffs*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CARLY HUDSON and<br>JOCELYN PASCALL,<br>for themselves, as private attorneys general, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HANNA ANDERSSON, LLC,<br><br>Defendant. | Case No. 3:26-cv-643<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNLAWFUL TRADE PRACTICES ACT, ORS 646.605 *et seq.***<br><br>DEMAND FOR JURY TRIAL |



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Plaintiffs Carly Hudson and Jocelyn Pascall, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and the investigation of their counsel, against Defendant Hanna Andersson, LLC ("Hanna Andersson" or "Defendant"):

## I. INTRODUCTION AND SUMMARY

1. Hanna Andersson is based out of Portland, Oregon. Hanna Andersson operates its website, HannaAndersson.com, where it advertises, markets, and sells mostly children's clothing (as well as some adult clothing, such as matching pajamas) throughout Oregon and the United States. All or almost all of the products offered by Hanna Andersson are branded as "Hanna Andersson" products and are offered and sold exclusively by Hanna Andersson.

2. Since October 2019, Hanna Andersson has engaged in a massive and consistent false discount advertising scheme on its website, HannaAndersson.com.[1] Specifically, Hanna Andersson advertises perpetual or near-perpetual discounts—typically 20% to 60% off—on most of its items. These discounts are taken from Hanna Andersson's inflated and self-created list prices for its items. Hanna Andersson's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Hanna Andersson's own regular offering prices for the items. However, Hanna Andersson's advertised discounts are false because Hanna Andersson never or almost never offers or sells the items at their list price.

3. Hanna Andersson also advertises false limited-time discounts for its products to induce consumers to purchase the products immediately before they supposedly return to the (fictitious) list price. However, Hanna Andersson's statements that the discounts are time-limited

[1] Based on the investigation of Plaintiffs' counsel, Hanna Andersson's false discount advertising scheme began in October 2019, soon after Hanna Andersson closed its retail stores and switched to selling exclusively online on its website HannaAndersson.com.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

are false. Immediately after a purportedly time-limited sales event ends, Hanna Andersson continues advertising all or nearly all of the products at similar "discounted" prices.

4. Hanna Andersson's deceptive pricing scheme is intended to trick consumers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised "sale" price represents a special bargain. Hanna Andersson perpetrates this illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.

5. Hanna Andersson's false discount advertising harms consumers like Plaintiffs by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception.").

6. Customers do not enjoy the actual discounts Hanna Andersson promises them, and its products are not in fact worth the amount that Hanna Andersson represents to them.

7. Hanna Andersson's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Plaintiffs and Class members, to pay price premiums to Hanna Andersson. *See Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 368 (2025).

8. Hanna Andersson's false discount advertising violates the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq.*, in numerous ways, as detailed in this Complaint.



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

9. Plaintiffs bring this lawsuit individually and on behalf of a nationwide class of consumers who purchased from Hanna Andersson one or more products advertised with a discount. Plaintiffs seek, for themselves and for each of the class members, statutory damages of $200 or actual damages, whichever is greater. Plaintiffs also seek an order for injunctive relief to enjoin Hanna Andersson from engaging in the unlawful conduct alleged herein.

## II. THE PARTIES

10. Plaintiff Carly Hudson is, and at all relevant times has been, a citizen and resident of the city of Portland, in Multnomah County, Oregon, and is an unsophisticated consumer party.

11. Plaintiff Jocelyn Pascall is, and at all relevant times has been, a citizen and resident of the city of Portland, in Multnomah County, Oregon, and is an unsophisticated consumer party.

12. Defendant Hanna Andersson, LLC is a limited liability company with its principal place of business in Portland, Oregon. Hanna Andersson, LLC owns and/or operates the Hanna Andersson website, HannaAndersson.com.

## III. JURISDICTION AND VENUE

13. **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendant. The amount in controversy exceeds $5,000,000, in part, because based on counsel's investigation, the class comprises over 25,000 individuals, and Plaintiffs seek, at minimum, statutory damages of $200 for each class member (for a total of $5,000,000 on this basis alone).


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

14. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant's principal place of business is in Portland, Oregon; (2) Defendant is authorized to do business and regularly conducts business in Oregon; (3) the claims alleged herein took place in Oregon; and/or (4) Defendant has committed tortious acts within Oregon (as alleged, without limitation, throughout this Complaint). Defendant has sufficient minimum contacts with Oregon to render the exercise of jurisdiction by this Court permissible.

15. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Defendant resides in this District and/or because Plaintiffs are Oregon citizens who reside in this District.

16. **Divisional Venue.** The Portland Division is the proper divisional venue under LR 3-2(b). Defendant's principal place of business is in Portland, in Multnomah County, which is part of the Portland Division. Additionally, Plaintiffs reside in Multnomah County, which is part of the Portland Division. Also, a substantial part of the events or omissions giving rise to the claims occurred in the Portland Division, including without limitation, Plaintiffs viewed the Hanna Andersson website and made their purchases from their homes in Multnomah County.

## IV. HANNA ANDERSSON'S FALSE DISCOUNT ADVERTISING SCHEME

17. Hanna Andersson operates its website, HannaAndersson.com, where it advertises, markets, and sells mostly children's clothing (as well as some adult clothing, such as matching pajamas) throughout Oregon and the United States. All or almost all of the products offered by Hanna Andersson are branded as "Hanna Andersson" products and are offered and sold exclusively by Hanna Andersson.

18. Since October 2019, Hanna Andersson has engaged in a massive and consistent false discount advertising scheme on its website, HannaAndersson.com. Specifically, Hanna


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Andersson advertises perpetual or near-perpetual discounts—typically 20% to 60% off—on most of its items. These discounts are taken from Hanna Andersson's inflated and self-created list prices for its items. Hanna Andersson's advertised discounts are viewed both under the law and by reasonable consumers to refer to discounts from Hanna Andersson's own regular offering prices for the items. However, Hanna Andersson's advertised discounts are false because Hanna Andersson never or almost never offers or sells the items at their list price.

19. Hanna Andersson aggressively advertises discounts throughout its website.

20. On its website product list pages, Hanna Andersson typically advertises the discounts by displaying a discounted price in red font, next to a higher purported strikethrough regular price (the "reference price"). Hanna Andersson will also often advertise the current promotion in red font beneath the reference price and discount price (e.g., "UP TO 40% OFF EVERYTHING").

21. On the individual product page, Hanna Andersson similarly displays the selling price in red font next to the strikethrough reference price. Hanna Andersson also advertises the current promotion in red font above the name of the item. See the screenshots below taken from the Hanna Andersson website on March 23, 2026.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## Boys Product List Page Displaying Discounted Clothing – 03/23/2026




## Product Page of Hanna Andersson Boys Swim Trunks – 03/23/2026





HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

22. Hanna Andersson makes similar pricing and discount representations in the online cart, where it displays the strikethrough reference price next to the selling price, as well as stating the "Item Savings," e.g., the amount the consumer is purportedly saving by purchasing now.

**Hanna Andersson Online Shopping Cart – 03/23/2026**




23. Hanna Andersson intends that consumers interpret and understand the strikethrough reference prices to stand for Hanna Andersson's regular former selling prices for those products. Hanna Andersson intends that consumers understand the reference price to represent the value of the product. Hanna Andersson intends that consumers understand and believe that by purchasing the product that day, consumers will enjoy an unusual and special bargain—specifically, that consumers will enjoy the advertised percentage-off savings from the product's regular selling price.

24. Hanna Andersson also advertises phony seasonal or other time-limited sales events to induce consumers to purchase the products immediately before they supposedly return to their (fictitious) reference prices.

25. For example, on March 23, 2026, the same day that the above screenshots were taken, at the top of each product list page, there was a banner stating: "HOURS LEFT! BIG SPRING SALE UP TO 40% OFF EVERYTHING*".

**Banner at Top of Product List Page – 03/23/2026**




26. Seeing this, a reasonable consumer would believe he or she needed to act quickly to take advantage of this sale before the "event" ends and the items return to their normal prices.

27. At the very top of the page, the "UP TO 40% OFF EVERYTHING*" could be clicked that revealed a "details" hyperlink, which when clicked, displayed a pop-up box stating that the "Big Spring Sale" ended at 11:59pm on March 23, 2026, i.e., that night.

**Details Pop-Up Box for the Big Spring Sale – 03/23/2026**





HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

28. However, on the very next day, March 24, 2026, Hanna Andersson advertised another sale. Now, the banner at the top of each product list page stated: "ALL EASTER – UP TO 50% OFF". Below is a screenshot (red box added) of the same Boys product list page from above, now taken on March 24, 2026.

**Boys Product List Page Displaying Discounted Clothing – 03/24/2026**




29. As the above screenshot shows, Hanna Andersson continued to offer its products at a purported discount after the "Big Spring Sale" ended. Hanna Andersson simply advertised a new sales event, this time offering its products at up to 50% off. All or nearly all of the products that had been offered at a purported discount during the "Big Spring Sale" continued to be offered at a purported discount during the new "All Easter" sales event.

30. Notably, when the "All Easter" sales event ended on March 29, 2026, Hanna Andersson did not advertise a new limited-time sales event; however, Hanna Andersson


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

nevertheless continued offering all or nearly all of the products at a purported discount. Below is a screenshot of the same Boys product list page from above, now taken on March 30, 2026.

**Boys Product List Page Displaying Discounted Clothing – 03/30/2026**




31. As the above screenshot shows, Hanna Andersson continued to offer its products at a purported discount after the "All Easter" sales event ended. Indeed, the items in the above screenshot were offered at the same "discounted" prices both during and after the "All Easter" sales event.

32. Plaintiffs' counsel's investigation has revealed that Hanna Andersson advertises perpetual or near-perpetual discounts on most of its products. Below are representative examples of perpetually discounted products.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com



**Perpetual "Discounts" on Bright Basics Survivor Hoodie**
(Item # 51058-A91)

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 01/02/20 – 01/16/20 | ~~$40~~ | $28 |
| 01/17/20 – 01/20/20 | ~~$40~~ | $24 |
| 01/21/20 – 02/25/20 | ~~$40~~ | $28 |
| 02/26/20 – 03/01/20 | ~~$40~~ | $24 |
| 03/02/20 – 03/14/20 | ~~$40~~ | $28 |
| 03/15/20 – 04/15/20 | ~~$40~~ | $24 |
| 04/16/20 – 04/29/20 | ~~$40~~ | $20 |
| 04/30/20 – 05/25/20 | ~~$40~~ | $24 |
| 05/26/20 – 06/08/20 | ~~$40~~ | $20 |
| 06/09/20 – 07/12/20 | ~~$40~~ | $24 |
| 07/13/20 – 07/22/20 | ~~$40~~ | $20 |



**Perpetual "Discounts" on Double Knee Kickstart Slim Jeans**
(Item # 59957-BX0)

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 07/20/21 – 08/28/21 | ~~$50~~ | $35 |
| 08/29/21 – 10/24/21 | ~~$50~~ | $30 |
| 10/25/21 – 11/24/21 | ~~$50~~ | $35 |
| 11/25/21 – 11/29/21 | ~~$50~~ | $30 |
| 11/30/21 – 03/02/22 | ~~$50~~ | $35 |
| 03/03/22 – 03/14/22 | ~~$50~~ | $30 |
| 03/15/22 – 03/28/22 | ~~$50~~ | $40 |
| 03/29/22 – 04/26/22 | ~~$50~~ | $35 |
| 04/27/22 – 05/08/22 | ~~$50~~ | $30 |
| 05/09/22 – 05/28/22 | ~~$50~~ | $35 |



**Perpetual "Discounts" on Core Shorts In Canvas**
(Item # 48080-GG7)

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 03/09/23 – 04/20/23 | ~~$40~~ | $32 |
| 04/21/23 – 05/02/23 | ~~$40~~ | $24 |
| 05/03/23 – 05/15/23 | ~~$40~~ | $32 |
| 05/16/23 – 05/20/23 | ~~$40~~ | $28 |
| 05/21/23 – 06/19/23 | ~~$40~~ | $24 |
| 06/20/23 – 07/16/23 | ~~$40~~ | $20 |
| 07/17/23 – 07/31/23 | ~~$40~~ | $24 |


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com



**Perpetual "Discounts" on Baby Wearable Sleep Sack**
(Item # 80937-76X)

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 03/12/24 – 03/21/24 | ~~$60~~ | $45 |
| 03/22/24 – 03/25/24 | ~~$60~~ | $42 |
| 03/26/24 – 04/01/24 | ~~$60~~ | $45 |
| 04/02/24 – 04/08/24 | ~~$60~~ | $48 |
| 04/09/24 – 04/15/24 | ~~$60~~ | $42 |
| 04/16/24 – 05/18/24 | ~~$60~~ | $36 |
| 05/19/24 – 05/25/24 | ~~$60~~ | $30 |
| 05/26/24 – 05/27/24 | ~~$60~~ | $29.40 |
| 05/28/24 – 06/10/24 | ~~$60~~ | $36 |
| 06/11/24 – 06/17/24 | ~~$60~~ | $40 |
| 06/18/24 – 06/27/24 | ~~$60~~ | $30 |
| 06/28/24 – 06/30/24 | ~~$60~~ | $29.40 |
| 07/01/24 – 07/11/24 | ~~$60~~ | $30 |
| 07/12/24 – 07/18/24 | ~~$60~~ | $42 |
| 07/19/24 – 07/25/24 | ~~$60~~ | $36 |
| 07/26/24 – 07/29/24 | ~~$60~~ | $45 |
| 07/30/24 – 08/05/24 | ~~$60~~ | $39 |
| 08/06/24 – 08/12/24 | ~~$60~~ | $48 |
| 08/13/24 – 08/23/24 | ~~$60~~ | $42 |



**Perpetual "Discounts" on Baby Peanuts Snoopy Hoodie Sweater**
(Item # 81823-1VR)

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 06/11/25 – 06/20/25 | ~~$62~~ | $50 |
| 06/21/25 – 06/26/25 | ~~$62~~ | $44 |
| 06/27/25 – 07/28/25 | ~~$62~~ | $43 |
| 07/29/25 – 08/04/25 | ~~$62~~ | $44 |
| 08/05/25 – 08/10/25 | ~~$62~~ | $56 |
| 08/11/25 – 08/20/25 | ~~$62~~ | $44 |
| 08/21/25 – 09/08/25 | ~~$62~~ | $37 |
| 09/09/25 – 10/06/25 | ~~$62~~ | $43 |
| 10/07/25 – 10/21/25 | ~~$62~~ | $37 |
| 10/22/25 – 10/24/25 | ~~$62~~ | $43 |
| 10/25/25 – 10/29/25 | ~~$62~~ | $43.50 |
| 10/30/25 – 11/23/25 | ~~$62~~ | $37.25 |
| 11/24/25 – 11/28/25 | ~~$62~~ | $31 |
| 11/29/25 – 12/02/25 | ~~$62~~ | $24.75 |
| 12/03/25 – 12/15/25 | ~~$62~~ | $37.25 |


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

33. Hanna Andersson continues to perpetrate the above-described false discount advertising scheme as of the date of the filing of this Complaint.

## V. PLAINTIFFS' ALLEGATIONS ARE BASED ON THEIR COUNSEL'S COMPREHENSIVE INVESTIGATION INTO HANNA ANDERSSON'S PRACTICES

34. Plaintiffs' allegations are based on their counsel's comprehensive investigation into Hanna Andersson's false discount advertising practices. Plaintiffs' counsel has been monitoring and scraping Hanna Andersson's website on an automated daily basis with a proprietary software program since June 19, 2017. Plaintiffs' counsel has compiled and extracted daily pricing and marketing data from the Hanna Andersson website for nearly all of the products Hanna Andersson has offered during this time. In total, Plaintiffs' counsel has assembled and analyzed a comprehensive historical database of daily prices and time-stamped screenshots of over 5.2 million daily product offerings for over 35,000 products over this period.

35. Plaintiffs' counsel's exhaustive big-data analysis of millions of data points shows that, since October 2019, Hanna Andersson advertised perpetual or near-perpetual discounts for the overwhelming majority of the products that it offered on its website. The advertised discounts were false, and Hanna Andersson's list prices (i.e., reference prices) from which the discounts were calculated were false and inflated.

## VI. OREGON LAW APPLIES TO PLAINTIFFS' CLAIMS

36. Oregon's consumer remedy statute, the UTPA, applies to the claims of all Plaintiffs and Class members.

37. Hanna Andersson's headquarters is in Portland, Oregon.[2] The Terms of Use for the Hanna Andersson website state that the website is "provided by Hanna Andersson, LLC,

---

2 *See* https://hannacareers.multiscreensite.com/.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

having a principal place of business at 608 NE 19th Avenue, Portland, OR 97232."[3] Hanna Andersson makes decisions about its marketing strategies for its website from its headquarters in Oregon. Hanna Andersson creates and approves of all its advertising from its headquarters in Oregon. The alleged fraudulent misconduct of Hanna Andersson that forms the basis of Plaintiffs' and Class members' claims emanates from Oregon.

38. Additionally, the Terms of Use state that they apply to the Hanna Andersson website and the products offered thereon, and then further state that "[a]ny dispute, claim, or controversy arising from or relating to these Terms will be governed by and construed in accordance with the laws of the State of Oregon." Accordingly, Oregon law applies to disputes concerning purchases made on its website (such as the purchases by Plaintiffs and Class members).

## VII. HANNA ANDERSSON'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES OREGON LAW

39. Hanna Andersson perpetrates this false discount advertising scheme because it works—lying about discounts increases demand and increases Hanna Andersson's revenues and profits.

40. Indeed, decades of academic research have established that the use of reference prices and discount advertising like that utilized by Hanna Andersson materially impacts consumers' behavior and induces them to purchase the "discounted" products. A reference price (e.g., the strikethrough price advertised by Hanna Andersson from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the

[3] *See* https://www.hannaandersson.com/terms-of-use.html.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[4]

41. When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Hanna Andersson, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

42. As a direct and proximate result of Hanna Andersson's false reference prices and false discounts, Plaintiffs and Class members were harmed and suffered ascertainable losses of money or property.

---

[4] *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

43. First, Plaintiffs and Class members were harmed because they would not have purchased the products at the prices they paid had they known that the discounts were fake and that the products had not in fact been regularly offered at the higher listed price. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception.").

44. Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

45. Additionally, Hanna Andersson's advertised limited-time sales events created a false sense of urgency, which made consumers more likely to make a purchase. Studies and articles have documented how limited-time sales induce customers to purchase products. For example, a study regarding the effect of time-limited advertisements concluded that "[t]he willingness to buy was significantly higher" and "the attitude towards the deal was more favorable." Aggarwal, P., *Use it or lose it: Purchase acceleration effects of time-limited promotions*, Journal of Consumer Behaviour (September 17, 2002) at 399–401.

46. Second, Plaintiffs and Class members were harmed because they did not receive the benefits of their bargains. Plaintiffs and Class members did not enjoy the actual discounts Hanna Andersson represented and promised to them. Plaintiffs and Class members did not


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

receive products that were worth the inflated amount that Hanna Andersson represented to them; the products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Hanna Andersson.

47. Third, Plaintiffs and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Hanna Andersson's deceptive pricing scheme. *See Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 368 (2025). Hanna Andersson's false discount advertising scheme artificially increases consumer demand for Hanna Andersson's products, which shifts the demand curve and allows Hanna Andersson to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Hanna Andersson's false advertising scheme enabled Hanna Andersson to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Hanna Andersson would have had to charge less for its products in order to enjoy the same level of demand.

48. Under the price premium theory, a consumer "still experience[s] an economic loss" even if she did not rely on the defendant's misrepresentations and even if she "received exactly what she was expecting at the price she was willing to pay." *Bohr v. Tillamook Cnty. Creamery Ass'n*, 373 Or. 343, 368 (2025).

49. In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

A retailer's use of false reference prices and false discounts constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

50. Courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

51. Oregon law prohibits false discount practices such as those perpetrated by Hanna Andersson. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits: "Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

52. Additionally, the UTPA prohibits sellers from using misleading price comparisons to advertise their products. ORS 646.608(ee) (citing ORS 646.883 and ORS 646.885). Specifically, the UTPA prohibits a seller from advertising a price comparison unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1); ORS 646.608(ee).


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

53. The UTPA also prohibits price comparison advertising which uses terms such as "regular," "reduced," "sale," and "originally" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(1); ORS 646.608(ee).

54. The UTPA also prohibits price comparison advertising which uses terms such as "discount," "____ percent discount," "$____ discount," "____ percent off," and "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(2); ORS 646.608(ee).

55. In order for a reference price to be a lawful former price, it must be a price at which the seller, in the regular course of its business, made good-faith sales of the same or similar product or offered in good faith to make sales of the same or similar product within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a).

56. Compliance with ORS 646.608(1)(j), OAR 137-020-0010, and OAR 137-020-0015 "is established based on facts provable by the seller." ORS 646.883(2).

57. As alleged in detail above, Hanna Andersson's advertised reference prices and discounts violate Oregon law because, based on the investigation of Plaintiffs' counsel, Hanna Andersson's advertised reference prices are inflated and fictitious, and Hanna Andersson's advertised discounts are false. Hanna Andersson advertises perpetual discounts for its products, and thus rarely, if ever, offers its products at their advertised reference price.

58. Also, as alleged in detail above, Hanna Andersson uses misleading price comparisons. For example, Hanna Andersson uses strikethrough list prices without clearly and conspicuously identifying in the advertisement the origin of the price that Hanna Andersson is comparing to the current price. As shown in the images above, Hanna Andersson uses


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

strikethrough list prices without any disclosure about where the strikethrough price comes from. Absent any disclosure, Hanna Andersson's strikethrough list prices are viewed under Oregon law and by reasonable consumers to refer to Hanna Andersson's own former regular prices for those products. These strikethrough list prices are false because Hanna Andersson in fact perpetually offers the products at lower "discounted" prices.

59. Also, as alleged in detail above, Hanna Andersson uses terms such as "sale" and "___% off" even though the products are not actually offered at a discount as compared to Hanna Andersson's own former regular prices. And Hanna Andersson makes no disclosure indicating that the price comparisons are to something other than to Hanna Andersson's own former prices.

60. The false reference price and false discount representations by Hanna Andersson were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

61. Hanna Andersson's false reference price and false discount representations are likely to mislead a reasonable consumer, and in fact did mislead Plaintiffs.

62. Hanna Andersson's false discount advertising is so pervasive across all its products and all its advertising that it is apparent that the heart of Hanna Andersson's marketing plan is to deceive the public.

63. Hanna Andersson's intent is to deceive consumers into believing that its products are worth, and have a market value equal to, the inflated reference price (the strikethrough list price), and that the lower advertised actual price represents a special bargain.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

64. The false or misleading nature of Hanna Andersson's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

65. As a direct and proximate result of Hanna Andersson's acts and omissions, all consumers who have purchased a product from Hanna Andersson that was advertised with a reference price or purported discount have been harmed and have lost money or property.

66. Hanna Andersson continues to advertise false reference prices, false discounts, and false limited-time savings to this day. There is no reason to believe that Hanna Andersson will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Hanna Andersson were to cease its unlawful practices, Hanna Andersson can and is likely to recommence these unlawful practices.

67. In acting toward consumers and the general public in the manner alleged herein, Hanna Andersson acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiffs, the Class, and the public.

## VIII. <u>PLAINTIFFS' FACTUAL ALLEGATIONS</u>

### <u>Plaintiff Carly Hudson</u>

68. Plaintiff Carly Hudson is, and at all relevant times has been, a citizen and resident of the city of Portland, in Multnomah County, Oregon.

69. Ms. Hudson is a victim of Hanna Andersson's false discount advertising scheme.

70. As detailed above, Hanna Andersson's false discounting practices have been ongoing since October 2019. During this time, Ms. Hudson has purchased products from Hanna Andersson which were advertised with false reference prices and false discounts.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

71. For example, on December 11, 2025, Ms. Hudson visited the Hanna Andersson website and ultimately purchased two matching sets of pajamas for adults.

72. While browsing Hanna Andersson's website, Ms. Hudson viewed pricing and discount representations similar to those described in detail above.

73. While browsing the website, Ms. Hudson viewed webpages advertising the Adult Holiday Flannel Pajama Pants (Item # 80039) (the "Pajama Pants"). The Pajama Pants were advertised with a strikethrough list price of "~~$69~~" and a sale price of "$34.50". Relying on Hanna Andersson's representations, Ms. Hudson reasonably believed that the Pajama Pants were normally offered and sold by Hanna Andersson for the $69 list price. Ms. Hudson reasonably believed that the Pajama Pants were thereby worth and had a value of $69. Ms. Hudson reasonably believed that the advertised sale price of $34.50 represented a special and unusual bargain, where Hanna Andersson was temporarily offering the Pajama Pants at 50% off the regular and normal selling price of $69. Relying on Hanna Andersson's representations, Ms. Hudson added two pairs of the Pajama Pants in the "candy stripes" color to her online shopping cart and ultimately purchased the products that day.

74. In the same web browsing session, Ms. Hudson viewed webpages advertising the Adult Holiday Flannel Pajama Top (Item # 80046) (the "Pajama Top"). Like the Pajama Pants, the Pajama Top was also advertised with a strikethrough list price of "~~$69~~" and a sale price of "$34.50". Relying on Hanna Andersson's representations, Ms. Hudson reasonably believed that the Pajama Top was normally offered and sold by Hanna Andersson for the $69 list price. Ms. Hudson reasonably believed that the Pajama Top was thereby worth and had a value of $69. Ms. Hudson reasonably believed that the advertised sale price of $34.50 represented a special and unusual bargain, where Hanna Andersson was temporarily offering the Pajama Top at 50%


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

off the regular and normal selling price of $69. Relying on Hanna Andersson's representations, Ms. Hudson added two of the Pajama Tops in the "candy stripes" color to her online shopping cart and ultimately purchased the products that day.

75. However, Hanna Andersson's price representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Hudson, Hanna Andersson had virtually never offered the Pajama Pants and the Pajama Top at the higher purported reference prices.

76. For example, counsel's investigation documented that for the period of October 11, 2025, through the date of Ms. Hudson's purchase on December 11, 2025, Hanna Andersson had always offered the Pajama Pants and the Pajama Top at a discount from their reference price, typically offering each of the items for between $34.50 and $48.25. See the tables below.



**Table Showing Perpetual "Discounts" on Pajama Pants**

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 10/11/25 – 10/26/25 | ~~$65~~ | $39 |
| 10/27/25 – 10/29/25 | ~~$65~~ | $45.50 |
| 10/30/25 – 11/03/25 | ~~$65~~ | $39 |
| 11/04/25 – 11/12/25 | ~~$69~~ | $48.25 |
| 11/13/25 – 11/17/25 | ~~$69~~ | $41.50 |
| 11/18/25 – 12/11/25 | ~~$69~~ | $34.50 |



**Table Showing Perpetual "Discounts" on Pajama Top**

| Time Period | Reference Price | Sale Price |
|---|---|---|
| 10/11/25 – 10/26/25 | ~~$65~~ | $39 |
| 10/27/25 – 10/29/25 | ~~$65~~ | $45.50 |
| 10/30/25 – 11/03/25 | ~~$65~~ | $39 |
| 11/04/25 – 11/12/25 | ~~$69~~ | $48.25 |
| 11/13/25 – 11/17/25 | ~~$69~~ | $41.50 |
| 11/18/25 – 12/11/25 | ~~$69~~ | $34.50 |


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

77. Additionally, as shown in the tables above, on November 4, 2025, Hanna Andersson increased the reference price for each item from $65 to $69 (the reference price that Ms. Hudson saw). This new reference price of $69 was likewise invented out of thin air. Hanna Andersson had never offered either item at the new $69 reference price.

78. The advertised reference prices of $69 were not Hanna Andersson's regular offering prices for the Pajama Pants and the Pajama Top and did not reflect the market values of the Pajama Pants and the Pajama Top. Ms. Hudson did not receive the advertised and promised savings from the true regular prices of the Pajama Pants and the Pajama Top.

79. And, as relevant under Oregon law, Hanna Andersson did not once offer the Pajama Pants or the Pajama Top for their advertised reference prices of $69 in the 30 days leading up to Ms. Hudson's purchase; nor did Hanna Andersson state the date on which it last offered the Pajama Pants or the Pajama Top for their advertised reference prices of $69.

80. Hanna Andersson's advertised reference prices and discounts were material misrepresentations and inducements to Ms. Hudson's purchases.

81. Ms. Hudson reasonably relied on Hanna Andersson's material misrepresentations regarding the advertised reference prices and discounts. If Ms. Hudson had known the truth, she would not have purchased the products at the prices she paid.

82. As a direct and proximate result of Hanna Andersson's acts and omissions, Ms. Hudson was harmed, suffered an injury-in-fact, and lost money or property.

83. When Ms. Hudson shopped at Hanna Andersson, she had no suspicion that Hanna Andersson's advertised reference prices and discounts were false. Hanna Andersson gave Ms. Hudson no reason to be suspicious. Ms. Hudson first learned of Hanna Andersson's false advertising scheme in January 2026 when her attorneys told her about Hanna Andersson's


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Hudson did not know or suspect that Hanna Andersson was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

84. Ms. Hudson has a legal right to rely now, and in the future, on the truthfulness and accuracy of Hanna Andersson's representations regarding the advertised reference prices and discounts for its products.

85. Ms. Hudson faces an imminent threat of future harm. Ms. Hudson would purchase from Hanna Andersson again in the future if she could have confidence regarding the truth of Hanna Andersson's price and discount representations. But without an injunction, Ms. Hudson has no realistic way to know which, if any, of Hanna Andersson's list prices, discounts, and sales are not false or deceptive.

86. Ms. Hudson will be harmed if, in the future, she is left to guess as to whether Hanna Andersson is providing a legitimate sale or not, and whether its products are actually worth the amount that Hanna Andersson is representing.

87. If Ms. Hudson were to purchase again from Hanna Andersson without Hanna Andersson having changed its unlawful and deceptive conduct alleged herein, Ms. Hudson would be harmed on an ongoing basis and/or would be harmed once or more in the future.

**Plaintiff Jocelyn Pascall**

88. Plaintiff Jocelyn Pascall is, and at all relevant times has been, a citizen and resident of the city of Portland, in Multnomah County, Oregon.

89. Ms. Pascall is a victim of Hanna Andersson's false discount advertising scheme.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

90. As detailed above, Hanna Andersson's false discounting practices have been ongoing since October 2019. During this time, Ms. Pascall has purchased products from Hanna Andersson which were advertised with false reference prices and false discounts.

91. For example, on November 28, 2025, Ms. Pascall visited the Hanna Andersson website and ultimately purchased a children's pajama set.

92. While browsing Hanna Andersson's website, Ms. Pascall viewed pricing and discount representations similar to those described in detail above.

93. While browsing the website, Ms. Pascall viewed webpages advertising the Holiday HannaJams Pajama Set (Item # 59852) (the "Pajama Set"). The Pajama Set was advertised with a strikethrough list price of "~~$55~~" and a sale price of "$27.50". Relying on Hanna Andersson's representations, Ms. Pascall reasonably believed that the Pajama Set was normally offered and sold by Hanna Andersson for the $55 list price. Ms. Pascall reasonably believed that the Pajama Set was thereby worth and had a value of $55. Ms. Pascall reasonably believed that the advertised sale price of $27.50 represented a special and unusual bargain, where Hanna Andersson was temporarily offering the Pajama Set at 50% off the regular and normal selling price of $55. Relying on Hanna Andersson's representations, Ms. Pascall added the Pajama Set in the "Festive Forest on Ecru" color to her online shopping cart and ultimately purchased the Pajama Set that day.

94. However, Hanna Andersson's price representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Pascall, Hanna Andersson had virtually never offered the Pajama Set at the higher purported reference price.

95. For example, counsel's investigation documented that for the period of September 28, 2025, through the date of Ms. Pascall's purchase on November 28, 2025, Hanna Andersson


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

had always offered the Pajama Set at a discount from its reference price, typically offering the Pajama Set for between $26 and $36.50. See table below.



**Table Showing Perpetual "Discounts" on Pajama Set**

| Time Period | Reference Price | Sale Price |
| --- | --- | --- |
| 09/28/25 – 10/06/25 | ~~$52~~ | $36 |
| 10/07/25 – 10/24/25 | ~~$52~~ | $31 |
| 10/25/25 – 10/26/25 | ~~$52~~ | $32.43 |
| 10/27/25 – 10/29/25 | ~~$52~~ | $36.50 |
| 10/30/25 – 10/31/25 | ~~$52~~ | $31.25 |
| 11/01/25 – 11/02/25 | ~~$52~~ | $26 |
| 11/03/25 | ~~$52~~ | $31.25 |
| 11/04/25 – 11/07/25 | ~~$55~~ | $33 |
| 11/08/25 – 11/09/25 | ~~$55~~ | $26.40 |
| 11/10/25 – 11/17/25 | ~~$55~~ | $33 |
| 11/18/25 – 11/28/25 | ~~$55~~ | $27.50 |

96. Additionally, as shown in the table above, on November 4, 2025, Hanna Andersson increased the reference price for the Pajama Set from $52 to $55 (the reference price that Ms. Pascall saw). This new reference price of $55 was likewise invented out of thin air. Hanna Andersson had never offered the Pajama Set at the new $55 reference price.

97. The advertised reference price of $55 was not Hanna Andersson's regular offering price for the Pajama Set and did not reflect the market value of the Pajama Set. Ms. Pascall did not receive the advertised and promised savings from the true regular price of the Pajama Set.

98. And, as relevant under Oregon law, Hanna Andersson did not once offer the Pajama Set for its advertised reference price of $55 in the 30 days leading up to Ms. Pascall's purchase; nor did Hanna Andersson state the date on which it last offered the Pajama Set for its advertised reference price of $55.

99. Hanna Andersson's advertised reference price and discount were material misrepresentations and inducements to Ms. Pascall's purchase.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

100. Ms. Pascall reasonably relied on Hanna Andersson's material misrepresentations regarding the advertised reference price and discount. If Ms. Pascall had known the truth, she would not have purchased the Pajama Set at the price she paid.

101. As a direct and proximate result of Hanna Andersson's acts and omissions, Ms. Pascall was harmed, suffered an injury-in-fact, and lost money or property.

102. When Ms. Pascall shopped at Hanna Andersson, she had no suspicion that Hanna Andersson's advertised reference prices and discounts were false. Hanna Andersson gave Ms. Pascall no reason to be suspicious. Ms. Pascall first learned of Hanna Andersson's false advertising scheme in January 2026 when her attorneys told her about Hanna Andersson's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Pascall did not know or suspect that Hanna Andersson was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

103. Ms. Pascall has a legal right to rely now, and in the future, on the truthfulness and accuracy of Hanna Andersson's representations regarding the advertised reference prices and discounts for its products.

104. Ms. Pascall faces an imminent threat of future harm. Ms. Pascall would purchase from Hanna Andersson again in the future if she could have confidence regarding the truth of Hanna Andersson's price and discount representations. But without an injunction, Ms. Pascall has no realistic way to know which, if any, of Hanna Andersson's list prices, discounts, and sales are not false or deceptive.

105. Ms. Pascall will be harmed if, in the future, she is left to guess as to whether Hanna Andersson is providing a legitimate sale or not, and whether its products are actually worth the amount that Hanna Andersson is representing.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

106. If Ms. Pascall were to purchase again from Hanna Andersson without Hanna Andersson having changed its unlawful and deceptive conduct alleged herein, Ms. Pascall would be harmed on an ongoing basis and/or would be harmed once or more in the future.

107. The deceptive practices and policies alleged herein, and experienced directly by Plaintiffs, are not limited to any single product or group of products. Rather, Hanna Andersson's deceptive discount advertising practices were, and continue to be, systematic and pervasive across all or nearly all of Hanna Andersson's products.

## IX. CLASS ALLEGATIONS

108. Plaintiffs bring this lawsuit on behalf of themselves, and on behalf of all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

109. **Class Definition:** Plaintiffs seek to represent the following nationwide class (the "Class"):

> **All persons nationwide who, within the applicable statute of limitations period, purchased from Hanna Andersson one or more products advertised at a discount.**

110. Specifically excluded from the Class are Hanna Andersson and any entities in which Hanna Andersson has a controlling interest, Hanna Andersson's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

111. **Application of the Discovery Rule.** The applicable limitations period and corresponding class period extends back to the date on which Hanna Andersson first engaged in its unlawful false discounting practices based on the discovery rule explicitly provided for in the UTPA. ORS 646.638(6). Based on the investigation of Plaintiffs' counsel, Hanna Andersson has engaged in its unlawful false discounting practices since October 2019.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

112. Plaintiffs and the members of the Class did not know, and could not have reasonably known, about Hanna Andersson's unlawful conduct. "[A] cause of action does not accrue under the discovery rule until the claim has been discovered or, in the exercise of reasonable care, should have been discovered." *FDIC v. Smith* 328 Or. 420, 428, 980 P.2d 141 (1999); *see also Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011) ("The statute of limitations begins to run when the Plaintiffs knows or, in the exercise of reasonable care, should have known facts that would make a reasonable person aware of a substantial possibility that each of the elements of a claim exists.").

113. When Plaintiffs shopped at Hanna Andersson, they had no suspicion that Hanna Andersson's advertised reference prices and discounts were false. Hanna Andersson gave Plaintiffs no reason to be suspicious. Each Plaintiff first learned of Hanna Andersson's false discount advertising scheme in January 2026 when their attorneys told them about Hanna Andersson's unlawful conduct and informed each of them that they were a victim of the scheme. Prior to this, Plaintiffs did not know or suspect—and had no reason to suspect—that Hanna Andersson was engaging in a false discount advertising scheme or that they had been a victim of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the Plaintiff's claims did not begin to accrue under the discovery rule until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

114. Likewise, Class members would not have known or suspected that Hanna Andersson was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would have believed that Hanna Andersson's pricing and discount representations were true.


**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

115. Reasonable consumers would have believed that Hanna Andersson's strikethrough reference prices: (1) represented Hanna Andersson's regular and normal prices that consumers had to pay for the products; (2) represented Hanna Andersson's recent former prices for the products (that is, the prices at which the products were regularly offered for sale); and (3) represented Hanna Andersson's prices that consumers would have to pay for the products when the sale ended.

116. Reasonable consumers would have believed that Hanna Andersson's advertised discounts represented a reduction from the regular and recent former prices of the products in the amounts advertised.

117. Moreover, Plaintiffs and the Class could not have, with the exercise of reasonable diligence, discovered Hanna Andersson's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover.

118. "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped at Hanna Andersson would have had no way to know, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have had no way to know, with the exercise of reasonable diligence, that Hanna Andersson's regular prices (i.e., the advertised strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off savings were false.

119. Plaintiffs' counsel only found evidence for Hanna Andersson's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

120. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on counsel's investigation, the Class comprises over 25,000 individuals. The exact number and identities of Class members are contained in Hanna Andersson's records and can be easily ascertained from those records.

121. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any exist. These common questions include, but are not limited to, the following:

a. Whether the alleged conduct of Hanna Andersson violates the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq*.;

b. Whether Hanna Andersson's alleged unlawful conduct pled herein were willful violations of ORS 646.608;

c. Whether Hanna Andersson engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608;

d. Whether Plaintiffs and the Class have suffered ascertainable losses of money or property as a result of Hanna Andersson's unlawful conduct;

e. Whether Hanna Andersson should be ordered to pay statutory damages or actual damages, whichever is greater, to Plaintiffs and to each Class member; and

f. Whether Hanna Andersson should be enjoined from engaging in the unlawful conduct alleged herein.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

122. **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Hanna Andersson's standard practices and schemes, bring the same claims, and face the same potential defenses.

123. **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

124. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Hanna Andersson's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

125. By its conduct and omissions alleged herein, Hanna Andersson has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

126. Hanna Andersson is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiffs against Hanna Andersson in this Complaint arises from and



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

is limited to statements or conduct by Hanna Andersson that consist of representations of fact about Hanna Andersson's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Hanna Andersson's goods; or the statements are or were made in the course of delivering Hanna Andersson's goods. Each cause of action brought by Plaintiffs against Hanna Andersson in this Complaint arises from and is limited to statements or conduct by Hanna Andersson for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act
### Oregon Revised Statutes § 646.605 *et seq*.

127. Plaintiffs reallege and incorporate by reference all paragraphs alleged hereinbefore.

128. Each Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

129. The Oregon Unlawful Trade Practices Act (the "UTPA"), ORS 646.605 *et seq*., is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorney fees. . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

> loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984).

130. Under the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages, and the court may provide any equitable relief the court considers necessary or proper." ORS 646.638(1). The court is also specifically authorized to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

131. The UTPA also permits a plaintiff to maintain a class action and recover the same remedies on behalf of the class, including statutory damages. ORS 646.638(8)(a)-(c).

132. Hanna Andersson is a "person," as defined by ORS 646.605(4).

133. Hanna Andersson is engaged in "trade" and "commerce" by advertising and offering for sale goods with reference prices and discounts to consumers in Oregon and nationwide through its website, which also directly or indirectly affects the people of Oregon, as defined by ORS 646.605(8).

134. Hanna Andersson's products are "goods" that are, or may be obtained, primarily for personal, family, or household purposes, as defined by ORS 646.605(6).

135. Plaintiffs and Class members purchased Hanna Andersson's goods for personal, family, and/or household purposes.

136. The unlawful methods, acts, and practices pled herein were committed in the course of Hanna Andersson's business. ORS 646.608(1).


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

137. Hanna Andersson's representations of reference prices and discounts are "advertisements" as defined by ORS 646.881(1).

138. Hanna Andersson's use of reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

139. Hanna Andersson's list prices for its products are representations of Hanna Andersson's own "former prices," or in the case of labeled introductory advertisements are representations of Hanna Andersson's "future prices," as defined by ORS 646.885.

140. By its conduct and omissions alleged herein, Hanna Andersson has committed unlawful methods, acts, or practices, including without limitation:

a. Hanna Andersson made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j).

b. Hanna Andersson advertised price comparisons that violate ORS 646.608(1)(j) by advertising reference prices that do not comply with one of the exceptions enumerated in OAR 137-020-0010(6)(a)-(g).

c. Hanna Andersson advertised former prices that were not prices at which Hanna Andersson, in the regular course of its business, made good-faith sales of the same or similar products or offered in good faith to make sales of the same or similar products within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a); ORS 646.608(1)(j).

d. Hanna Andersson engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee).


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

e. Hanna Andersson engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "sale," where the reference price was not in fact Hanna Andersson's own former price, or in the case of introductory advertisements, was not Hanna Andersson's future price. ORS 646.608(ee).

f. Hanna Andersson engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "___ percent off," "$___ off," "___ percent discount" and/or "$___ discount" where the reference price was not in fact Hanna Andersson's own former price, or in the case of introductory advertisements, was not Hanna Andersson's future price. ORS 646.608(ee).

141. Hanna Andersson's unlawful methods, acts, and practices pled herein were "willful violations" of ORS 646.608 because Hanna Andersson knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

142. Hanna Andersson engaged in the reckless or knowing use or employment of the unlawful methods, acts, or practices alleged herein which have been declared unlawful by ORS 646.608, such that statutory damages may be recovered on behalf of class members. ORS 646.638(8)(a).

143. With respect to any omissions, Hanna Andersson at all relevant times had a duty to disclose the information in question because, inter alia: (a) Hanna Andersson had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Hanna Andersson concealed material information from Plaintiffs and Class members; and/or (c) Hanna Andersson made partial representations, which were false and misleading absent the omitted information.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

144. Hanna Andersson's misrepresentations and nondisclosures deceive and have a tendency to deceive a reasonable consumer and the general public.

145. Hanna Andersson's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

146. As a direct, substantial, and/or proximate result of Hanna Andersson's unlawful conduct, Plaintiffs and Class members were harmed, suffered injury-in-fact, and suffered ascertainable losses of money or property.

147. Plaintiffs and Class members reasonably relied on Hanna Andersson's material misrepresentations and would not have purchased Hanna Andersson's products at the prices that they paid had they known the truth.

148. Plaintiffs and Class members did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts that Hanna Andersson represented and promised to them. Plaintiffs and Class members did not receive products that were worth the inflated amount that Hanna Andersson represented to them; the products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference prices advertised by Hanna Andersson.

149. By its conduct and omissions alleged herein, Hanna Andersson caused the demand for its products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Hanna Andersson. Put differently, as a result of its misrepresentations, Hanna Andersson has been able to charge a price premium for its products that it would not have been able to charge absent the misrepresentations. Without the


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

misrepresentations, Hanna Andersson would have had to charge less for the products in order to enjoy the same level of demand.

150. Plaintiffs seek for themselves and each member of the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief; and (4) attorneys' fees and costs. ORS 646.638(3); ORS 646.638(8).

151. **Permanent injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the UTPA to protect themselves, the Class, and the general public from Hanna Andersson's false advertisements, misrepresentations, and omissions.

152. The UTPA specifically authorizes the court to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

153. When a consumer seeks to enjoin an unlawful trade practice that affects the general public, such as false advertising, courts refer to that type of injunctive relief as "public injunctive relief," and refer to the consumer as a "private attorney general." *See*, *e.g.*, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public."); *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999) (referring to consumers seeking public injunctive relief as "private attorneys general"); *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) ("Private citizens act as private attorneys general in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests."); *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (explaining that the


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

"paradigmatic example" of public injunctive relief is "an injunction against the use of false advertising"); *Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 55 (9th Cir. 2020) (explaining that "relief which enjoins deceptive practices directed at the public is public injunctive relief").

154. Hanna Andersson's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Hanna Andersson absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Hanna Andersson from committing the unlawful practices alleged herein.

155. The balance of the equities favors the entry of permanent public injunctive relief against Hanna Andersson. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Hanna Andersson's ongoing false advertising absent the entry of permanent public injunctive relief against Hanna Andersson.

156. Plaintiffs lack an adequate remedy at law to prevent Hanna Andersson from engaging in the unlawful practices alleged herein. Each Plaintiff would shop for products at Hanna Andersson again if they could have confidence regarding the truth of Hanna Andersson's prices and the value of its products. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Hanna Andersson is providing a legitimate sale or not, and whether Hanna Andersson's products are actually worth the amount that Hanna Andersson is representing.

157. Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Hanna Andersson from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

impossible to know what product(s) each Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Hanna Andersson.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the proposed Class, request that the Court order relief and enter judgment against Defendant Hanna Andersson, LLC as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2. Declare that the discovery rule, pursuant to, without limitation, ORS 646.638(6), applies to extend any applicable limitations period and the corresponding class period back to the date Defendant first engaged in the unlawful conduct alleged herein;

3. Declare that Defendant's conduct alleged herein violates the UTPA;

4. Order Defendant to pay statutory damages of $200 or actual damages, whichever is greater, to Plaintiffs and to each member of the Class, pursuant to, without limitation, ORS 646.638(1) and 646.638(8)(a);

5. Order Defendant to pay punitive damages to Plaintiffs and to each of the Class members in an amount to be determined at trial;

6. Permanently enjoin Defendant from engaging in the unlawful conduct alleged herein;

7. Order that Defendant maintain the following records for at least two years from the date of each advertisement and/or offer for sale of products, for auditing purposes to


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

ensure compliance with the ordered injunctive relief: (1) the advertised list price for each product; (2) the offer price and/or net selling price of each item; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each product;

8. Retain jurisdiction to monitor Defendant's compliance with the permanent injunctive relief;

9. Order any other equitable relief the Court deems appropriate;

10. Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

11. Grant such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Date: March 31, 2026.

Presented by:

HATTIS LUKACS & CORRINGTON

By: Che Corrington
Che Corrington

Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiffs*
*and the Proposed Class*